UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DONA RYAN, on behalf of herself and
others similarly situated

        Plaintiff,

v.                                    Case No:   2:14-cv-231-FtM-38CM

LP FORT MYERS, LLC,

        Defendant.

_____/

## ORDER[1]

    This matter comes before the Court on Defendant's Motion to Dismiss, or in the Alternative, to Stay the Proceedings and Compel Arbitration and Supporting Memorandum of Law (Doc. 9) filed on June 2, 2014. Plaintiff filed a response in opposition on June 16, 2014. (Doc. 11). After review of the initial motion and response, the Court ordered the Parties to file a reply and sur-reply regarding one limited issue, the validity of the arbitration agreement. The Parties have done so. (See Doc. 15; Doc. 20).[2] This matter is now ripe for review.

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

[2] The Court ordered the Parties to address the validity of the arbitration agreement in light of Plaintiff's argument. To be clear, the Court pin cited Doc. 11, at 3-4. See Doc. 13. Nonetheless, in Defendant's reply, and without leave from the Court, it addressed more than what the Court directed it to. Accordingly, the additional arguments, (Doc. 15, at 1-2), are disregarded by the Court for the purposes of this motion.

**Background**

Plaintiff Dona Ryan worked for Defendant LP Fort Myers, LLC in 2013 and 2014. (Doc. 9-3, at ¶8; Doc. 12, at ¶¶3-7). Ryan signed employment agreements, including an arbitration agreement, when she began working for LP Fort Myers. (Doc. 9-3, at ¶3). Specifically, the Parties entered into the arbitration agreement on January 24, 2013. (Doc. 9-4). The arbitration agreement plainly states all claims relating to Ryan's employment with LP Fort Myers shall be deemed waived unless submitted to final and binding arbitration. (Doc. 9-4, at ¶1). The arbitration agreement covers all alleged Fair Labor Standard Act ("FLSA") violations. (Doc. 9-4, at ¶3). In addition, if either party seeks relief in court for a dispute covered by the agreement, the other party may require the dispute to be arbitrated. (Doc. 9-4, at ¶2).

LP Fort Myers also has an employee handbook. (See generally Doc. 9-6; Doc. 15-1, at 7, Exh. 2). Ryan acknowledged she received a copy of the employee handbook on January 24, 2013. (Doc. 9-5). Notably, Ryan's acknowledgment indicates the employee handbook is not intended to constitute a contract, promise, or guaranty of the policies stated within it. (Doc. 9-5).

Initially, from about January 24, 2013 to March 1, 2013, Ryan worked for LP Fort Myers as a part time Director of Social Services. (Doc. 12, at ¶4; Doc. 15-1, at 6, Exh. 1). Ryan's initial job was categorized with LP Fort Myers as *pro re nata.* Ryan's *pro re nata* status meant she did not have a set schedule but instead worked on an "as needed" basis.[3] (Doc. 15-1, at 9). Ryan's initial work, from January 2013 to March 2013, was

---

[3] Ryan denies being hired as a *pro re nata* employee but asserts she was employed as a temporary employee. (Doc. 20, at ¶2). The Court does not find a substantive difference in the Parties' disagreement

performed to cover another employee's maternity leave. (See Doc. 12, at ¶4). When the other employee returned from maternity leave, Ryan's work with LP Fort Myers was no longer needed. (Doc. 12, at ¶4; see generally Doc. 20, at ¶5).

Ryan returned to LP Fort Myers in July 2013; about four months after her *pro re nata* position ended. (Doc. 12, at ¶5). When Ryan returned to LP Fort Myers she did not sign a new arbitration agreement. (Doc. 12, at ¶6). This time Ryan worked as a full time Director of Social Services from about July 5, 2013 to February 20, 2014. (Doc. 12, at ¶5; Doc. 15-1, at 6, Exh. 1). It is this full time employment timeframe that is at issue in this litigation. That is, Ryan claims she was not paid overtime compensation properly for her work performed from July 2013 to February 2014. (Doc. 1, at ¶18).

Due to Ryan's claim, Ryan initiated this lawsuit against LP Fort Myers on April 22, 2014. (Doc. 1). The Complaint contains one count for recovery of overtime compensation pursuant to the FLSA. (Doc. 1). LP Fort Myers now seeks to dismiss this action or stay this action and compel arbitration pursuant to the January 24, 2013 arbitration agreement and employee handbook. Ryan opposes the motion.

In general, LP Fort Myers asserts the arbitration agreement and employee handbook provide that all disputes, including disputes pursuant to the FLSA, must be resolved by arbitration. (See Doc. 9-4; Doc. 9-6). LP Fort Myers asserts the arbitration agreement complies with the Federal Arbitration Act ("FAA") and Florida contract law. Ryan opposes arbitration for two reasons. First, Ryan argues the FLSA provides for attorney's fees and costs whereas the arbitration proceeding does not. Second, Ryan argues a valid arbitration agreement does not exist in this instance because she was

---

of Ryan's status as a *pro re nata* or temporary employee for the purposes of this motion. For the purposes of this motion only, the Court finds Ryan was initially hired as a *pro re nata* employee.

rehired as a full time employee in July 2013 and when she was rehired she did not sign a new arbitration agreement. In essence, Ryan argues the arbitration agreement does not cover her latter full time employment with LP Fort Myers.

**Discussion**

Arbitration is a form of binding dispute resolution. Parties can contractually agree to arbitrate all or some claims pursuant to their legal relationship. The FAA places "arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 63 (2010) (internal citations omitted). Moreover, overtime compensation claims brought pursuant to the FLSA can be arbitrated. Sammons v. Sonic-N. Cadillac, Inc., No. 6:07-cv-277-Orl-19DAB, 2007 WL 2298032, at *4 (M.D. Fla. Aug. 7, 2007) ("The Eleventh Circuit has implicitly approved arbitration of FLSA claims.") (citing Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359 (11th Cir. 2005); Montes v. Shearson Lehmon Bros., Inc., 128 F.3d 1456, 1458 (11th Cir. 1997); Bolamos v. Globe Airport Sec. Servs., Inc., No. 02-21005-CIV-MORENO, 2002 WL 1839210 (S.D. Fla. May 21, 2002), aff'd, 64 Fed. Appx. 743 (11th Cir. 2003)); De Oliveira v. Citicorp N. America, Inc., No. 8:12-cv-251-T-26TGW, 2012 WL 1831230, at *1 (M.D. Fla. May 18, 2012) ("FLSA claims can be arbitrated and that federal policy favors arbitration.").

State law governs whether an arbitration agreement is enforceable. Delano v. Mastec, Inc., No. 8:10-CV-320-T-27MAP, 2010 WL 4809081, at *2 (M.D. Fla. Nov. 18, 2010) (citation omitted); Shotts v. OP Winter Haven, Inc., 80 So. 3d 456, 464 (Fla. 2011) (citing Powertel, Inc. v. Bexley, 743 So.2d 570, 574 (Fla. 1st DCA 1999)). Here, Florida

law applies. In order to determine whether an arbitration agreement is valid, and thus enforceable against the parties, three questions must be answered: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration has been waived. Mora v. Abraham Chevrolet-Tampa, Inc., 913 So.2d 32, 33 (Fla. 2nd DCA 2005) (citing Raymond James Fin. Servs., Inc. v. Saldukas, 896 So.2d 707, 711 (Fla. 2005) (citing Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla. 1999))).

Under Florida law, a contract like the arbitration agreement at issue here is enforceable so long as there was an offer, acceptance, and sufficient specification of essential terms. Jones v. Sallie Mae, Inc., No. 3:13-cv-837-J-99MMH-MCR, 2013 WL 6283483, at *4 (M.D. Fla. Dec. 4, 2013) (citations omitted). Ryan takes no issue with any of these elements of the arbitration agreement. In addition, the Court has not been presented with any evidence of fraud, duress, unconscionability, or public policy that would warrant a finding that the arbitration agreement is invalid. See Rent-A-Center, West, Inc., 561 U.S. at 68 ("Like other contracts, however, [arbitration agreements] may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'") (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)); see also Shotts, 86 So.3d at 464-65. Upon review of the arbitration agreement and in light of the relevant law, the Court finds the arbitration agreement is valid. The Parties have agreed to arbitrate this FLSA claim which is an arbitrable issue. In addition, no party has waived a right to arbitration.

The Parties' arguments as they relate to whether Ryan was rehired when she started her full time position miss the mark. The Parties' arguments do not attack the

validity of the arbitration agreement but instead contest whether the arbitration covers Ryan's full time employment. The arbitration agreement is silent on this issue. Thus, there is no language within the agreement that limits the arbitration to apply to only one type of position with LP Fort Myers or only one time frame of employment. Instead, the language of the arbitration agreement plainly indicates all claims relating to Ryan's employment shall be arbitrated or otherwise waived. (Doc. 9-4, at ¶2). The Court has been provided with no persuasive authority to suggest otherwise. Moreover, the law is clear that any doubts concerning the scope of arbitration issues should be resolved in favor of arbitration. Mainsail Dev., LLC v. Rusco Inv., Inc., No. 8:11-CV-0045-T-33AEP, 2011 WL 2938056, at *3 (M.D. Fla. June 20, 2011); see also Jones, 2013 WL 6283483, at *4 (noting doubts concerning the scope of arbitration issues should be resolved in favor of arbitration) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983)). To the extent there are any doubts, the Court finds any doubts way in favor of arbitration in this matter.

Furthermore, litigants retain all substantive statutory rights in the arbitral forum. Delano, 2010 WL 4809081, at *5. The arbitration agreement also supports this principle. (Doc. 9-4, ¶5) ("The arbitrator shall have the authority to award the full range of remedies that could be awarded by a court setting in the applicable jurisdiction and applying relevant law including, without limitation and if applicable, an award of attorney's fees and costs."). Thus, if the arbitrator finds it is proper, Ryan may receive attorney's fees and costs if she is a prevailing plaintiff even in the arbitral forum. Id. (citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991)). Given the availability of fees and costs, the Court finds Ryan's argument does not negate the validity of the arbitration

agreement. <u>Delano</u>, 2010 WL 4809081 at *5 ("Given the availability of fees and costs to a prevailing plaintiff under the FLSA, Plaintiffs have not shown that the disparity between their small potential recoveries and their potential costs is so great that their claims could not be effectively prosecuted on an individual basis."); Gilmer, 500 U.S. at 26 ("by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum.") (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985)).

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion to Dismiss, or in the Alternative, to Stay the Proceedings and Compel Arbitration and Supporting Memorandum of Law (Doc. 9) is **GRANTED**. The Parties shall proceed to arbitration. All proceedings in this action are **STAYED** pending completion of arbitration.

2. The Clerk is directed to add a stay flag and administratively close the case until notification by the Parties that the case is due to be reopened or dismissed.

3. The Parties are directed to (a) file a written status report every ninety (90) days during the pendency of the arbitration; (b) jointly notify the Court in writing within seven (7) days of the conclusion of the arbitration proceedings.

4. Going forward, the Parties are further directed to (a) supply courtesy copies pursuant to the Standing Order (Doc. 5); (b) file exhibits to motions as attachments to the main document. See M.D. Fla. Administrative Procedures for Electronic Filing in Civil and Criminal Cases ("Each separate exhibit must

be filed as a separate attachment to the main document."); and (c) follow all directions from Court Orders. See footnote 2 within this Order.

**DONE** and **ORDERED** in Fort Myers, Florida this 8th day of July, 2014.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record